**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

KEITH BENNETT, an individual; CYRUS BOWTHORPE, an individual; JASON BRUNNER, an individual; JOSHUA CARSWELL, an individual; CHRISTOPHER CHAMPAGNE, an individual; ANDY CONNER, an individual; LOI DAWKINS, an individual; MICHAEL DOZARIO, an individual; MICHAEL GOCKE, an individual; MICHAEL GOULD, an individual; CINDY HALE, an individual; JEFFREY HANCOCK, an individual; PATRICK KEARNEY, an individual; GABRION KISLER, an individual; CAMERON LEFLER, an individual;, PATRICK MCCURDY, an individual; JEREMY MUIR, an individual; GWEN NESBITT, an individual; MEGAN ROBERTS, an individual; TIMOTHY SIGEL, an individual,

Plaintiffs,

v.

KING COUNTY, a Washington county, DOW CONSTANTINE, King County

**CASE NO.**

**COMPLAINT**

JURY DEMANDED



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

Executive and DOW CONSTANTINE, and their marital community; MITZI JOHANKNECHT, former King County Sheriff, PATTI-COLE TINDALL, King County Sheriff, and JOHN AND/OR JANE DOES 1-5

Defendants.

## I. INTRODUCTION AND SUMMARY

1. This is a civil rights action is brought pursuant to 42 U.S.C. §1983 for prospective injunctive and monetary relief to remedy Defendants' violations of Plaintiffs' rights protected by the Free Exercise Clause in the First Amendment of the U.S. Constitution as well as the Equal Protection and Due Process Clauses, both Procedural and Substantive, of the Fourteenth Amendment of the U.S. Constitution.

2. This action also seeks relief under Washington State Law based on the same nucleus of operative facts supporting Plaintiffs' federal claims. This action seeks prospective injunctive relief to remedy Defendants' violations of Plaintiff's' Free Exercise rights protected by the Washington State Constitution and the King County Charter; Plaintiffs' rights to privacy protected by the Washington State Constitution; and Plaintiffs' rights to procedural due process pursuant to the Washington State Constitution.

3. Plaintiffs also seek monetary relief pursuant to the Washington Law Against Discrimination, Ch. 49.60 RCW (WLAD); breach of statutory duties imposed by the Civil Service for Sheriff's Chapter of the Washington Code, Ch. 41.14 RCW; breach of contract; and common law tort.

4. Finally, Plaintiffs' claims also seek attorney fees and costs pursuant to 42 U.S.C.


ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

§1988; WLAD; Washington Equal Access to Justice ACT; and other grounds based on statute, contract or other recognized equitable grounds.

5. The acts giving rise to the claims asserted herein occurred in King County, Washington.

6. King County, Washington is within the territorial jurisdiction of the United States District Court in and for the Western District of Washington.

7. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343 because the Complaint asserts federal question claims by alleging facts plausibly stating claims that Defendants violated the Plaintiffs rights under the U.S. Constitution seeking prospective injunctive relief as well as monetary relief of compensatory damages and punitive damages pursuant to 42 U.S.C. §1983 and for attorney fees and expanded costs pursuant to 42 U.S.C. §1988.

8. Plaintiffs also state claims for the prospective injunctive relief of reinstatement by alleging facts that Defendants violated Plaintiffs rights under the Washington State Constitution and the Charter. These state law claims arise from the same nucleus of operating facts that support the federal question claims. The Court has ancillary pendent jurisdiction over these claims.

9. Finally, Plaintiffs also state claims for monetary relief by alleging facts that Defendants violated WLAD, breached an employment agreement of which Plaintiffs are a beneficiary and breached state law tort duties. Additionally, Plaintiffs seek attorney fees and costs for Defendants violating WLAD and other grounds that include by agreement, by statute



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

or pursuant to other recognized equitable grounds, including the Uniform Access to Equal Justice Act. These claims arise from the same nucleus of operative facts as the Plaintiffs federal question claims. The Court has ancillary pendent jurisdiction over these claims.

10. Venue is proper in this District because at least one Individual Defendant resides in this District, King County maintains its principal place of business in this District, and the events giving rise to Plaintiffs' claims occurred in this District.

## II. THE PARTIES AND EACH DEFENDANT'S PERSONAL PARTICIPATION

11. Plaintiffs are former employees of King County (County) who worked for the County's Department of Public Safety (Department) and provided law enforcement services within King County, Washington. At all material times Plaintiffs were Washington citizens who resided in the Western District of Washington.

12. Defendant County is a Washington home charter county and a "person" for purposes of 42 U.S.C. §1983.

13. In or around 1968, the County became a home charter Washington county and was constituted and began operating under a "Charter," which is the County's constitution (Charter). Prior to the Charter being adopted, the County's sheriff was duly elected, but the Charter, when originally adopted, changed the County's sheriff position to become an appointed position at the next general election.

14. In 1996, the Charter was amended.

15. Within the Charter's 1996 amendment the County sheriff position was changed and became an elected position once again at the next general election.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

16. The Charter's 1996 amendment also provided the Sheriff would administer the Department.

17. The Charter's 1996 amendment required the County's sheriff to administer the Department pursuant to the State's general law.

18. The Charter's 1996 amendment continued to recognize that the Department's employees remained employees under the County's executive branch,

19. The Charter's 1996 amendment removed some of the County's legislative body, the County Council (Council)'s power and authority to legislate changes to the Department.

20. Defendant Mitzi Johanknecht was publicly elected as the County Sheriff in November 2017; was sworn in as the County Sheriff on January 2, 2018; and served as Sheriff until her term expired on December 31, 2021 (Former Sheriff).

21. During her term, and in July 2020, the Commission passed a resolution to place on the ballot for voter approval in the November 2020 general election a measure to amend the Charter, specifically Amendments 5 and 6, which affected the 1996 amendment to the Charter.

22. First, these amendments, if approved by the voters, made the Sheriff an appointed position.

23. These amendments, if approved, eliminated the restrictions on the Council's power and authority to legislate the Department.

24. These amendments, if approved, gave the County executive the power and authority to administer the Department.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

25. In November 2020, the County's voters approved these amendments.

26. The Council formally amended the Charter to include these amendments in 2020.

27. The Charter, however, provided Amendment 5 did not become effective until the Former Sheriff's term ended.

28. The Charter also provided Amendment 6 did not become effective until the Former Sheriff's term ended.

29. Defendant Dow Constantine is, and at all material times was, the County's executive (Executive).

30. The Executive personally participated in the deprivations of Plaintiffs' U.S. Constitutional rights alleged herein.

31. On August 9, 2021, the Executive created and issued his Executive Order ACO-8-27-EO. (County's Get Vaccinated, Accommodated, or be Terminated Policy)

32. On August 9, 2021, the Executive created and issued ACO-8-27-EO, which mandated all County Executive Branch employees were subject to their continued public employment being terminated without their consent if they were not "fully vaccinated" by October 18, 2021 failed to obtain future COVID-19 vaccinations recommended by the CDC, or were not granted both an exemption from having to get a Vaccine (Vaccine) injections for either medical or religious reasons and not a religious or medical accommodation would be subject to having their continued public employment as a commissioned Department police officer terminated without their consent.

33. At all times material hereto, both before and after the Former Sheriff's term


ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

ended, the Executive directed his subordinates and other County employees over whom he had power and control as well as Defendant Tindall, to implement and apply the County's Get Vaccinated, Accommodated, or be Terminated Policy within all the County's agencies, including the Department.

34. When the Former Sheriff's elected term ended, the Executive directed his subordinates in the Department to implement and apply the County's Get Vaccinated, Accommodated, or be Terminated Policy within the Department.

35. The Executive was fully aware that the County's Get Vaccinated, Accommodated, or be Terminated Policy was being implement and applied within the Department both before and after the Former Sheriff's term ended. The Executive acquiesced to and ratified its implementation and application.

36. The Executive had the power and authority to intervene in the implementation and application of the County's Get Vaccinated, Accommodated, or be Terminated Policy, over all County executive branch agencies other than the Department prior to the Former Sheriff's term ending and power and authority over the Department after the Former Sheriff's term ended and, therefore, had the power and authority to intervene and stop the way the County's Get Vaccinated, Accommodated, or be Terminated Policy was being implemented an applied, but he failed to do so.

37. The Former Sheriff personally participated in the deprivations of Plaintiffs' constitutional rights alleged herein up until her term ended.

38. The Former Sheriff had the power and authority to administer the Department



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

during her term.

39. The Former Sheriff knew the County's Get Vaccinated, Accommodated, or be Terminated Policy was being implemented and applied and the way it was being implemented and applied within the Department. She acquiesced in, and ratified, the way it was being implemented and applied within the Department.

40. The Former Sheriff had the power and authority, as well as the duty, to administer the Department until her term ended. She, therefore, had the power and authority to intervene and stop the way the County's Get Vaccinated, Accommodated, or be Terminated Policy was being implemented and applied within the Department. She could have and should have intervened because the way the County's Get Vaccinated, Accommodated, or be Terminated Policy was being implemented and applied within the Department was unconstitutional.

41. Based on information and belief the Former Sheriff acquiesced to and failed to intervene and stop the way the County's Get Vaccinated, Accommodated, or be Terminated Policy was being implemented and applied unconstitutionally within the Department due to: (a) her belief that Charter amendments 5 and 6 were passed by the council as being a power grab and the resources expended to have the amendments approved by the King County voters during the 2020 general election; and. (b) public disagreements over the way she administered the Department expressed by the Executive and some Council members who publicly called for her resignation. Based on these facts, Plaintiffs allege based on information and belief, that the Former Sheriff's acquiescence and failure to intervene was callous indifference to the Plaintiffs' rights under the U.S. Constitution.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

42. Defendant Patti-Cole Tindall (Tindall) was appointed interim County sheriff in January 2022. In May 2022, she was appointed the County's sheriff Tindall has served as County sheriff from the date she was appointed until present.

43. Tindall personally participated in the deprivation of Plaintiffs' rights under the U.S. Constitution both before and after she was appointed to be the County's interim sheriff. Before her appointment she was the County's under sheriff and second in charge to administer the Department, subordinate only to the Former Sheriff. During this time, Tindall actively participated in the implementation and application of the County's Get Vaccinated, Accommodated, or be Terminated Policy within the Department at the Executive's direction. She continued her personal participation after she was appointed interim Sheriff and then Sheriff.

44. Tindall also directed her subordinates within the Department to implement and apply the County's Get Vaccinated, Accommodated, or be Terminated Policy in the Department in the unconstitutional way it was implemented and applied.

45. Tindall was fully aware of the way the County's Get Vaccinated, Accommodated, or be Terminated Policy was being implemented and applied within the Department, and acquiesced to and ratified the way it was being applied and implemented.

46. At all material times, Tindall, had the power and authority to intervene and stop the way the County's Get Vaccinated, Accommodated, or be Terminated Policy was being implemented and applied, but she did not.

47. Tindall could have and should have intervened and stopped the way the County's Get Vaccinated, Accommodated, or be Terminated Policy was being implemented and applied


ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

because it was being implemented and applied unconstitutionally.

48. John and/or Jane Does 1-5 are all natural persons who are yet to be identified. At all material times they were County employees or agents who personally participated in violating Plaintiffs' rights under the U.S. Constitution at the express direction of one or more of: Constantine, Former Sheriff, and Tindall. They participated with callous indifference to the Plaintiffs' rights under the U.S. Constitution. Defendants Constantine, Tindall, Former Sheriff, Jane/John Does 1-5 will collectively be hereafter referred to as the "Individual Defendants."

49. The foregoing actions of the Defendants set in motion a series of unbroken events that led to the deprivations of Plaintiffs' U.S. Constitutional rights alleged herein.

50. Defendants' acts and omissions were intentional or with callous indifference to the Plaintiff's rights under the U.S. Constitution.

51. Each Plaintiff is a natural person who, at all material times, were Washington residents.

## III. JURISDICTION AND VENUE

52. The acts giving rise to the claims asserted herein occurred in King County, Washington.

53. King County, Washington is within the territorial jurisdiction of the United States District Court in and for the Western District of Washington.

54. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343 because the Complaint asserts federal question claims by alleging facts plausibly stating claims that Defendants violated the Plaintiffs rights under the U.S. Constitution seeking prospective



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

injunctive relief as well as monetary relief of compensatory damages and punitive damages pursuant to 42 U.S.C. §1983 and for attorney fees and expanded costs pursuant to 42 U.S.C. §1988.

55. Plaintiffs also state claims for the prospective injunctive relief of reinstatement by alleging facts that Defendants violated Plaintiffs' rights under the Washington State Constitution and the Charter. These state law claims arise from the same nucleus of operating facts that support the federal question claims. The Court has ancillary pendent jurisdiction over these claims.

56. Finally, Plaintiffs also state claims for monetary relief by alleging facts that Defendants violated WLAD, breached an employment agreement of which Plaintiffs are a beneficiary and breached state law tort duties. Additionally, Plaintiffs seek attorney fees and costs for Defendants violating WLAD and other grounds that include by agreement, by statute or pursuant to other recognized equitable grounds, including the Uniform Access to Equal Justice Act. These claims arise from the same nucleus of operative facts as the Plaintiffs federal question claims. The Court has ancillary pendent jurisdiction over these claims.

57. Venue is proper in this District because at least one Individual Defendant resides in this District, the KCSO maintains its principal place of business in this District, and the events giving rise to Plaintiffs' claims occurred in this District.

## IV. <u>FACTS</u>

**Plaintiffs were all Terminated Without sing the Process Mandated by Washington's General laws.**

58 Up until December 12, 2021, each Plaintiff was employed by the County as a



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

permanent commissioned deputy or sergeant who was providing police officer services to the Department.

59 Each Plaintiff's public employment was governed by the Civil Service for Sherriff's Office chapter in Washington's general laws, which are contained within the Washington Code This chapter is contained in Ch. 41.14 RCW (Chapter). The Chapter is, at and all material times, constitutional, valid, and part of Washington's general laws.

60 The Charter binds all Washington counties and their respective sheriffs and sheriffs' departments.

61 The Charter bound and binds the County, the Department, the Former Sheriff during her term, and Tindall.

62 RCW 41.14.010 provides the Chapter's purpose was, and is, to establish a merit system for county deputy sheriffs and other employees of the offices of county sheriff, thereby raising the standards and efficiency of such offices and law enforcement in general.

63 The Chapter establishes a *State* civil service commission in each Washington county, including the County, to carry out its provisions (Commission).

64 At all material times, the County had a population of one million citizens or more and was assigned the powers and duties of the Commission, with the caveat that the duties in RCW 41.14.120 were, and are, nondelegable and nonassignable to any other body; rather, the duties enumerated therein remain in the Commission.

65 RCW 41.14.120 provides, in part, "No person in the classified civil service who has been permanently appointed or inducted into civil service under provisions of this chapter



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

shall be removed, suspended, demoted or discharged except for cause, and only upon written accusation of the appointing power or any citizen or taxpayer…"

66 All Plaintiffs were classified in Washington's civil service and had been permanently appointed or inducted into civil service under provisions of the Chapter.

67 RCW 41.14.120 further provides each classified civil service person who was permanently appointed or inducted into civil service under provisions of the Chapter must be served a copy of the written accusation and a duplicate copy filed with the Commission.

68 The Former Sheriff was each Plaintiff's appointing authority during her term.

69 Defendant Tindall became each Plaintiff's appointing authority once she was appointed interim sheriff.

70 Defendants did not utilize the procedures in the Chapter when they terminated any Plaintiff's continued public employment.

71 RCW 41.14.110 provides the grounds upon which each Plaintiff's continued public employment may be removed or discharged, suspended without pay, demoted, or reduced in rank, or deprived of vacation privileges or other special privileges. ]

72 Each Plaintiff was statutorily entitled to be served this notice prior to any adverse employment decision becoming final.

73 No Plaintiff committed a ground enumerated in RCW 41.14.120.

74 If properly invoked by their supervising authority, RCW 41.14.120 guaranteed each Plaintiff a statutory process by which the Commission must investigate, report, adjudicate



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

at a public hearing, and enter written findings determining whether their appointing authority had just cause for any one or more of the enumerated adverse employment actions enumerated therein.

75 Despite their not having invoked the Commission's subject matter jurisdiction or otherwise afforded any Plaintiff the statutory procedures necessary to take an adverse employment action against any Plaintiff, the County had the sheriff at that time expressly or constructively terminated one or more Plaintiff's continued public employment.

76 The first Plaintiff to be terminated was constructively terminated on December 12, 2021. The last Plaintiff to be terminated was terminated in June 2022.

77 No Plaintiff was served with a statement of accusation or permitted a public hearing before the Commission.

78 Each Plaintiff was terminated for not having been "fully vaccinated," which meant they had to get one Johnson & Johnson COVID-19 vaccine injections or two Pfizer or Moderna vaccine injections 14 days prior to October 18, 2021.

79 Each Plaintiff's public employment as a deputy sheriff was also governed by a Collective Bargaining Agreement between the King County Police Officers Guild, the County, and the Department at the date their public employment as a deputy sheriff terminated, except Plaintiff Loi Dawkins who had been recently promoted to Captain immediately prior to the last day she was employed.

80 Each Plaintiff had a recognized property right in their continued public employment.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

**A. Each Plaintiff's U.S. and Washington Constitutional Rights and Their Rights Under the Charter were Violated.**

89. On September 9, 2021, the Executive published an "Update" to all Department members stating: "My message to you today is simple and direct. If you do not get vaccinated, or receive approval for an accommodation, you will be separated from employment with King County. This is not an idle threat intended to gain compliance and then back away from later."

90. To be exempted and accommodated from having to comply with the County's Get Vaccinated, Accommodated, or be Terminated Policy, two separate and independent things had to occur. First, the Department employee must be granted an exemption from having to be fully vaccinated by October 18, 2021; and second, the County must have accommodated the exemption.

91. Both prior to and after December 31, 2021, the Executive directed the County's Human Resources Department (KCHR) to administratively handle and process all Department employee requests for an exemption from having to comply with the County's Get Vaccinated, Accommodated, or be Terminated Policy, as well as all Department employees' requests that the County accommodate an exempt employee.

92. Each Plaintiff requested the Department and County grant them a religious exemption from the County's Get Vaccinated, Accommodated, or be Terminated Policy because they sincerely held a religious belief that interfered with their ability to become fully vaccinated.

93. Each Plaintiff's religious exemption request was submitted in writing except for the exemption request made by Plaintiff Patrick Kearney.

94. Plaintiff Kearney orally notified his Major that he sincerely held a religious belief



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

that interfered with his ability to comply with the County's Get Vaccinated, Accommodated, or be Terminated Policy, and he orally requested a religious exemption from having to comply with that policy and that the County accommodate his religious exemption by allowing him to continue his public employment utilizing the same safety and prevention measures he had been successfully using prior to the County's Get Vaccinated, Accommodated, or be Terminated Policy being issued, and he was willing to frequent testing.

95. Each Plaintiff's, other than Plaintiff Kearney's, religious exemption request was granted by the County and the Department.

96. Based on the foregoing, Plaintiff Kearney pleads upon information and belief that his Major failed to make a written record or process his oral religious exemption and accommodation request, which proximately caused his continued public employment to be terminated.

97. At the Executive's direction, KCHR promulgated, and the Executive approved and implemented, a procedure that implemented applied the County's Get Vaccinated, Accommodated, or be Terminated Policy regarding exemption and accommodation requests. (E & A Procedure)

98. The E & A Procedure was never published, and no Plaintiff was notified about the E& A Procedure. The E & A Procedure was the County's official policy and practice when it was created and approved by the Executive. It became the Department's official policy and practice once the Former Sheriff's term ended.

99. The E & A Procedure was reduced to writing internally.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

100. Pursuant to the then existing Charter, neither the Executive nor the County had either the power or authority to implement or apply the County's Get Vaccinated, Accommodated, or be Terminated Policy or the accommodation 7 A Procedure within the Department. Instead, only the Former Sheriff had the power and authority to do so, provided they did not conflict with her duties imposed by the State's general laws, which included the Chapter.

101. Although the Former Sheriff did not herself create or officially implement or apply either the County's Get Vaccinated, Accommodated, or be Terminated Policy or the E & A Procedure within the Department, she had full knowledge that it was occurring within the Department.

102. Former Sheriff could have, should have, but did not, use her power and authority under the Charter to administer the Department and not permit, or once she became aware of it stop, the E & A Procedure from being used within the Department to implement and apply the County's Get Vaccinated, Accommodated, or be Terminated Policy

103. Former Sheriff, by acquiescing in the Executive's and County's ultra vires actions within the Department on and prior to December 31, 2021, ratified the E & A Procedure being used within the Department to implement and apply the County's Get Vaccinated, Accommodated, or be Terminated Policy.

104. Likewise, during the Former Sheriff's term, Tindall, as the Under Sheriff, had power and authority to administer the Department provided she obey the duties imposed by the State's general laws,



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

105. Like the Former Sheriff, Tindall had full knowledge that the E & A Policy implementing and applying the County's Get Vaccinated, Accommodated, or be Terminated Policy was occurring within the Department.

106. Also like the Former Sheriff, Tindall could have, should have, but did not, use her power and authority to not permit, or once she became aware of it stop, the E & A Procedure being used within the Department to implement and apply the County's Get Vaccinated, Accommodated, or be Terminated Policy,

107. By acquiescing in the Executive's and County's ultra vires actions within the Department on and prior to December 31, 2021, Tindall ratified the E & A Procedure being used within the Department to implement and apply the County's Get Vaccinated, Accommodated, or be Terminated Policy.

108. Tindall's ratification continued when she was appointed interim sheriff and the sheriff.

109. After she was appointed interim sheriff and then sheriff, Tindall actively participated in the E & A Procedure being used within the Department to implement and apply the County's Get Vaccinated, Accommodated, or be Terminated Policy.

110. After her appointments, Tindall also directed her subordinates that she had the power and authority to supervise to use the E & A Procedure to implement and apply the County's Get Vaccinated, Accommodated, or be Terminated Policy within the Department.

111. Both prior to and after December 31, 2021, Jane/John Does 1-5 were the County employees who were directed to, and did, use the E & A Procedure to implement and apply the



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

County's Get Vaccinated, Accommodated, or be Terminated Policy within the Department.

112. The Executive and KCHR represented and described the E & A Procedure as an "interactive process."

113. The Executive and KCHR further represented and described that this interactive process required the essential functions of an exempt Department employee's job and "other issues such as the cost of the accommodation; whether the accommodation infringes on the job rights or benefits of other employees; whether the accommodation compromises workplace safety, decreases workplace efficiency, or requires other employees to do more than their share of potentially hazardous or burdensome work."

114. The E & A Procedure provides, "In the context of the interactive process, [the County] will take into consideration the risk that unvaccinated employees present to the health and safety of all [County] employees and the public."

115. Finally, the E & A Procedure directed KCHR personnel to contact the exempt Department employee to schedule a meeting to discuss each exempt Department employee's accommodation request.

116. Each Plaintiff requested the County and Department accommodate their religious exemption that had been granted.

117. The Defendants denied each Plaintiff's request for a religious accommodation.

118. The Defendants failed to track or document any accommodation request or their decision to grant or deny a requested accommodation.

119. Defendants should have tracked and documented each exempt Department


ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

employee's accommodation request and the corresponding accommodation decision.

120. The County and the Department have each claimed the other was responsible for tracking and documenting each Plaintiff's accommodation request and the corresponding accommodation decision.

121. Each Plaintiff's accommodation decision was denied concurrent with them being granted a religious exemption.

122. There was no interactive process that involved a Plaintiff or permitted a Plaintiff to participate in between the time they were notified their religious exemption was granted and any request for a religious exemption was denied.

123. After each Plaintiff was denied a religious accommodation, they were ostensibly allowed to discuss the denial of a religious accommodation.

124. Multiple Plaintiffs requested a discussion regarding, but any such discussion was either not with a person who had sufficient knowledge to discuss why the Plaintiff was denied a religious accommodation or had the discretion to deviate from the accommodation decision.

125. No Plaintiff was allowed to present declarations or challenge the bases upon which the decision to deny a religious accommodation was made.

126. No Plaintiff was permitted to suggest other reasonable accommodations other than possible reassignment.

127. When a Plaintiff wanted to discuss reassignment options, the effort was fruitless.

128. For instance, after Plaintiff Roberts was notified that he had been granted a



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

religious exemption and concurrently denied a religious accommodation, Plaintiff Roberts requested a discussion regarding reassignment as an accommodation.

129. In response, Plaintiff Roberts was directed to contact KCHR and advised KCHR was the department that would discuss reassignment as an accommodation with him.

130. Plaintiff Roberts then contacted KCHR to discuss reassignment options.

131. When Plaintiff Roberts contacted KCHR to have a discussion about reassignment as an accommodation, KCHR did not immediately respond to Plaintiff Roberts' request for a discussion.

132. While Plaintiff Roberts was awaiting KCHR's response to his request for a discussion, Plaintiff Roberts's continued public employment was terminated for not being in compliance with the County's Get Vaccinated, Accommodated, or be Terminated Policy.

133. Plaintiff Roberts then filed a complaint with The Washington State Human Resources Commission (HRC).

134. In response to Plaintiff Roberts' HRC Complaint, KCHR claimed the Department was the department he would need to contact to discuss reassignment as an accommodation.

135. Other Plaintiffs were treated in substantially the same manner as Plaintiff Roberts was treated.

136. Additionally, Plaintiff Conner specifically wrote up a requested accommodation for religious exempt department employees. Plaintiff Conner observed and had personal knowledge that many duties and even sergeants spent approximately one-half of their worktime



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

online or on the phone handing phone details handled completely inside their patrol cars and were not engaging in public-facing activities.

137. Plaintiff Conner wrote up a proposal for a reasonable accommodation that would allow the Department's religiously exempt police officers to perform these functions in their patrol care, which would free up other Department police officers to perform the public-facing job functions.

138. Plaintiff Conner submitted his alternate accommodation proposal to KCHR and the Department, but nobody responded or permitted him to discuss the alternate accommodation proposal with them.

139. After waiting a reasonable amount of time, Plaintiff Conner supported documents he received from a Public Records Act request that demonstrated the Department's great need regarding the Department's need to fill multiple "deputy patrol position[s]."

140. Despite his supplemental submission accompanied by his suggestion that his written alternative reasonable accommodation would advance both providing a reasonable accommodation that would equally serve the County's stated interest in stopping the spread of COVID-19 by unvaccinated Department police officers and reduce the need for the Department to fill as many deputy patrol positions, nobody responded to his supplemental submission or discussed it with him.

141. Numerous Plaintiffs requested reassignment to the Communications Center as a 911 operator, as an alternate accommodation because that position only required a phone and a computer, and each Plaintiff already possessed both.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

142. Despite these requested alternative accommodations, no Plaintiff received a response or were permitted to discuss them prior to their continued public employment being terminated.

143. Plaintiffs became increasingly frustrated with their not being able to have an interactive dialogue about, or participate in determining, alternative accommodations, and lesser restrictive alternatives to their public employment being terminated.

144. After the County announced the County's Get Vaccinated, Accommodated, or be Terminated Policy, 81 Department employees applied for religious exemptions and 17 applied for secular medical exemptions.

145. Some Department employees resigned because of the County's Get Vaccinated, Accommodated, or be Terminated Policy. If one of these Department employees had requested an exemption, their resignation caused their application to be withdrawn.

146. Excluding the withdrawn exemption requests. 89 exemption requests were processed.

147. Of the 89 exemption requests that were processed, 84 were granted and 5 denied.

148. Prior to notifying the exempt Department employees they were granted exemptions, the exempt Department employees were assumed to have also requested an accommodation for their exemptions.

149. The assumed accommodation requests were decided using the E & A Procedure.

150. The E & A Procedure provided a mechanism that allowed the person making an accommodation decision discretion to make individualized accommodation decisions on



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

whether a particular exempt Department employee would be accommodated or not.

151. That discretion was exercised, and 3 exempt Department employees were accommodated, and 81 exempt Department employees were not.

152. Based on the foregoing, Plaintiffs allege, based on information and belief, that the Defendants created an official County and Department policy and practice that would purposefully avoid any interactive process regarding alternative accommodations, including reassignment, and deny any meaningful discussion regarding the decision to deny religious accommodations or otherwise allow exempt employees to have a constitutionally required pre-deprivation hearing prior to their public employment ending.

**B. The Proffered Reasons Underlying the County's Get Vaccinated, Accommodated, or be Terminated Policy lack Scientific Support and Created Great Public Burden.**

153. In or prior to August 2021, one or more drug companies that manufactured a Vaccine, including Pfizer, published a report acknowledging 5% of the people who were "fully vaccinated" would be infected with COVID (breakthrough infection).

154. Moreover, the CDC published data around the same time demonstrating that 4.53% of the fully vaccinated population would experience a breakthrough infection.

155. The CDC data, however, more likely than not, underreported breakthrough infections. In May 2021 the CDC only tracked breakthrough infections that resulted in hospital or death and did not track breakthrough infections that resulted in asymptomatic infection or infection with less severe adverse health consequences.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

156. The Wisconsin Veteran Administration released data that became public that breakthrough infections based on positive test results exceeded 14% amongst fully vaccinated persons.

157. In November 2021 the County reported that 95% of the County's workforce had been fully vaccinated.

158. One week prior to the October 18, 2021, the deadline to become fully vaccinated, 200 Department employees were not in compliance with the County's Get Vaccinated, Accommodate, or be Terminated Policy, and there were 59 vacancies within the Department.

159. Based on this data, Defendants estimated the Department would lose between 50 - 100 Department employees because they either would not or could not comply with the County's Get Vaccinated, Accommodate, or be Terminated Policy.

160. Defendants, therefore, extended the deadline for a Department employee to comply with the County's Get Vaccinated, Accommodated, or be Terminated Policy until December 2, 2021.

161. The County's Get Vaccinated, Accommodated, or be Terminated Policy resulted in Department staff shortages.

162. The Department had the highest percentage of employees terminated due to lack of vaccination out of all the County's departments.

163. Approximately 4.6% of the Department's employees were terminated because they did not get vaccinated.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

164. As of February 2022, there number of vacancies in the Department almost doubled and numbered 106 vacancies, and 40 of them had been created because the County, Executive, Department, and Tindall terminating them because they would not or could not get vaccinated.

165. Moreover, in February 2022, the County, Executive, Department, and Tindall planned on terminating 10 more deputies.

166. To fill this record spike in Department vacancies, a $15,000 signing bonus was offered to any law enforcement officer who began working for the Department, but that signing bonus caused no appreciable increase in filling the vacancies.

167. By May 2022 the Department had 113 commissioned and 59 professional employee vacancies and the implementation and application of the County's Get Vaccinated, Accommodated, or be Terminated Policy accounted for 31% of the total vacancies.

168. By July 2023, the County, Executive, Department, and Tindall knew that 100 law enforcement officers who had been in the Department were gone due to their decision to terminate each officer's continued public employment because they would not or could not get vaccinated.

169. As predicted by the data regarding breakthrough infections, the County's Get Vaccinated, Accommodated, or be Terminated Policy did not stem the spread of COVID-19. By February 2022, the County's Public Health Department published data that 62% of the recent COVID-19 infections in King County at that time were breakthrough infections amongst fully vaccinated individuals.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

170. Concurrently, the US Center for Disease Control published statements recognizing natural immunity (prior infection) was also effective to stem the spread of COVID-19.

171. Despite this data the County, Executive, Department, and Tindall refused to revise the County's Get Vaccinated, Accommodated, or be Terminated Policy or the E & A Procedure.

172. The County's Get Vaccinated, Accommodated, or be Terminated Policy and the E & A Procedure were already unduly restricted in October 2021.

173. At that time, most states allowed for a weekly testing option for those who had a religious or medical exemption from having to become fully vaccinated.

174. The weekly testing option was in line with the federal government's vaccine mandate accommodation policy.

175. The implementation and application of the County's Get Vaccinated, Accommodated, or be Terminated Policy coincided with a dramatic increase in crime, especially violent crime in the County.

176. Shootings in the County had more than doubled in 2021 and increased 54% from the 2017-2020 average.

177. There was a 129% increase in murders in the County between 2019 and 2021.

178. Based on this data, Plaintiffs allege, based on information and belief, that Defendants' using the E & A Procedure to implement and apply the County's Get Vaccinated, Accommodated, or be Terminated Policy or the E & A Procedure, which resulted in mass



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

terminations of the Department's police officers more likely than not caused, or contributed in large part, to the spike in shootings and murders in King County in 2021 and continuing into 2022.

179. Subsequent information received through Public Records Act requests and other sources demonstrate, and Plaintiffs allege, based on information and belief derived from this information, that accommodation decisions were made with inadequate consideration given regarding the economic and noneconomic costs of accommodation to the Department and to the public it serves.

180. Based on the same information and belief, accommodation decisions were made with inadequate identification of the burden an accommodation would have created.

181. Based on the same information and belief, accommodation decisions were made with inadequate transparent analysis of the true threat an unvaccinated Department employee posed compared with the true threat a vaccinated employees posed based on the breakthrough infection data.

182. Based on the same information and belief, accommodation decisions were made without considering the efficacy of the vaccines to prevent infection.

183. Based on the same information and belief, accommodation decisions were made, without calculating the cost to the public that resulted from mass Department terminations of its police officers and the Department's corresponding inability to provide adequate public safety services because the Department's experienced commissioned deputies and sergeants either resigned, were constructively terminated, or expressly terminated for not being able to or



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

otherwise not complying with the County's Get Vaccinated, Accommodated, or be Terminated Policy.

184. Based on the same information and the other facts alleged in this Complaint, Plaintiffs allege, based on information and belief that accommodation decisions were made, without investigating less restrictive accommodations, such as assigning the essential job functions of the Department's police officers as a whole that did not required public-facing activity to the Plaintiffs and other exempt deputies and sheriffs and assigning the public facing job functions to the Department's vaccinated deputies, sergeants and other fully vaccinated police officers, weekly testing, and natural immunity.

185. Defendants also treated the Department's religious exempt employees, including the Plaintiffs' differently and less favorably than fully vaccinated Department employees.

186. Defendants permitted the continued public employment of the Department's fully vaccinated deputies and sergeants who did not have sincerely held religious beliefs that interfered with their ability to become fully vaccinated. Defendants were aware that their continued public employment carried with it, a risk they would experience a breakthrough infection and then transmit the virus on par, or greater, than a religiously exempt deputy or sergeant.

187. Defendants accepted this risk of COVID transmission for the class members who were fully vaccinated deputies and sergeants.

188. Defendants, however, would not accept the same the equal or lesser risk of COVID transmission from the members of the class consisting of the Department's exempt



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

nonvaccinated religiously exempt employees, including Plaintiffs.

189. Free Exercise of religion is a fundamental constitutional right the U.S. Constitution protects.

190. Because the difference between the two classes involves a fundamental U.S. Constitutional right, the difference in treatment must serve a compelling County interest and be narrowly tailored to serve that compelling interest.

191. There is not even a rational basis, much less a narrowly tailored basis to treat the two classes differently based on the County's interest expressed in the County's Get Vaccinated, Accommodated, or be Terminated Policy, which is to prevent COVID transmission.

192. Plaintiffs are not aware of any religious exempt department employees being accommodated. Based on their awareness, Plaintiffs allege, based on information and belief, that no religiously exempt Department employee received an accommodation.

193. Based on information and belief, the three exempt Department employees who were accommodated were Department employees who had a secular basis for exemption.

194. The only difference in the risks posed by a class consisting of department employees who were unvaccinated for a secular reason and Plaintiffs' class, which are those Department employees were unable to be vaccinated for a religious reasons is the class members in the Plaintiffs' class want to exercise their Free Exercise rights and the members in the secular exempt Department employee class have a secular reason that interferes with their ability to be fully vaccinated.

195. The difference between those two classes is based on religion and is subject to


ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

strict scrutiny.

196. Plaintiffs are also a member of a class of unvaccinated police officers who provide law enforcement services within the County that have a sincerely religious belief that interferes with their ability to be vaccinated. Their inability to be vaccinated and, therefore, ineligible to provide police officer services within the County thereby causing a gap in the police officer services the Department can provide in the County.

197. The gap caused in the police officer services the Department can provide is filled by allowing police officers from other law enforcement agencies to provide those police officer services the Department no longer has the capacity to provide through mutual aid agreements and other means.

198. The law enforcement officers whose services fill the gap are members of another class, which is police officers allowed to perform police officer services within the County.

199. The other law enforcement agencies accommodated their exempt police officers.

200. King County allows these other law enforcement agencies' unvaccinated exempt police officers to provide the same police officer services that the members in Plaintiffs' class would provide if their religious exemption was accommodated.

201. This basis for the difference in treatment between these two classes is secular. It is Plaintiffs' class being employed by the Department and the other class being the police officers are employed by a different law enforcement agency. They both provide the same services. The difference in the employing agency or department is secular.

202. As a result, the County treats its unvaccinated religious exempt Department



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

police officers differently and less favorably than it does other unvaccinated police officers who are employed by a different law enforcement agency.

203. To treat the two similarly situated classes the same, the County could have, but did not, prohibit any unvaccinated police officer to provide police officer services within the County.

204. This difference in treatment requires a compelling interest that is narrowly tailored to achieve that compelling interest.

205. The difference in treatment between these two classes does not meet the rigor required because it is not narrowly tailored.

206. This caused a gap in service because the Plaintiffs and other religiously exempt Department police officers.

207. This difference in treatment was underinclusive to address the County's stated interests.

208. Likewise, the E & A Procedure was not narrowly tailored to achieve the County's expressed interest in County's Get Vaccinated, Accommodated, or be Terminated Policy.

209. The County's Get Vaccinated, Accommodated, or be Terminated Policy and the E & A Procedure were not narrowly tailored to achieve the County's expressed purposes in the policy.

210. Defendants did not consider or use the least restrictive alternative to accommodate the Free Exercise rights of Plaintiff's and other religious exempt Department employees.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

211. No Plaintiff had a COVID-19 transmission or infection traced to them in the prior 18 months.

212. The County did not consider PPE, weekly testing, the other accommodations one or more Plaintiffs suggested, as a lesser or the least restrictive alternative to still serve the County's stated interest while at the same time allowing Plaintiffs and other religious exempt Department employees to freely exercise their sincerely held religious beliefs.

213. Five separate arbitrators considering similar arguments from grievances filed by employees in State agencies have all analyzed similar actions taken by the respective agency in those proceedings. All five arbitration awards found, *inter alia,* that failure to consider other accommodations outside vaccination was concerning and raised questions of good faith.

214. Many other law enforcement agencies and fine run institutions also accommodated their exempt employees using means that did not infringe on their religious exempt employees' Free Exercise rights.

215. The other agencies include the Department of Commerce (COM), Housing Finance Commission (HFC), Office of Administrative Hearings (OAH), Student Achievement Commission (SAC), State Investment Board (SIB), Utilities and Transportation Commission (UTC), and all other agencies categorized as small agencies.

216. The Employment Security Department (ESD) accommodated 257 of 258 employees found to have a sincerely held religious belief, while Health Care Authority (HCA) accommodated 79 of 86 employees with a religious exemption.

217. Overlake Medical Center accommodated a large percentage of its employees in a



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

hospital that cared for sick people.

218. These other agencies and institutions' employees engaged in equal or greater public facing job duties and dealt with populations that were equally or more vulnerable.

**C. The Plaintiffs:**

219. Each Plaintiff other than Plaintiff Kearney, applied for a religious exemption in writing.

220. Plaintiff Kearney notified his supervisor, Major Swain, that he sincerely held a religious belief that interfered with his ability to get a COVID-19 Vaccine.

221. Plaintiff Keith Bennett was a Deputy Sheriff. He applied for and was granted a religious exemption to the Covid-19 vaccination mandate (the "Mandate") but was denied accommodation and was terminated on February 22, 2022. Mr. Bennett performed all of his work alone in his patrol vehicle outdoors. Much of his administrative work was capable of being performed remotely. He had at most minimal interaction with the public, and he was able to use N95 masks and social distancing during such interaction. Mr. Bennett sanitized and disinfected his patrol car, work area and substations. No COVID-19 infection or transmission was ever traced to him. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship they would have suffered had they accommodated his religious exemption.

222. Plaintiff Cyrus Bowthorpe was a Deputy Sheriff. He applied for and was granted a religious exemption to the Covid-19 vaccination mandate (the "Mandate") but was denied accommodation and was terminated on January 23, 2022. Mr. Bowthrope performed all of his



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

work alone in his patrol vehicle outdoors. Much of his administrative work was capable of being performed remotely. He was able to use N95 masks and social distancing during such interaction. Mr. Bowthrope sanitized and disinfected his patrol car, work area and substations. Mr. Bowthrope had demonstrable natural immunity to COVID-19 by way of an antibody test. No COVID-19 infection or transmission was ever traced to him. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship they would have suffered had they accommodated his religious exemption.

223. Plaintiff Jason Brunner was a Deputy Sheriff. He applied for and was granted a religious exemption to the Covid-19 vaccination mandate (the "Mandate") but was denied accommodation and was terminated on February 1, 2022. Mr. Brunner performed all of his work alone in his patrol vehicle outdoors. Much of his administrative work was capable of being performed remotely. He had at most minimal interaction with the public, and was able to use N95 masks and social distancing during such interaction. Mr. Brunner used tyvex suits as additional protection, and sanitized and disinfected his patrol car, work area and substations. Mr. Brunner had demonstrated natural immunity to COVID-19 prior to termination. No COVID-19 infection or transmission was ever traced to him. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship they would have suffered had they accommodated his religious exemption.

224. Plaintiff Joshua Carswell was a Deputy Sheriff/EMT/Aircraft Rescue Fire Training officer ("ARFT"). He applied for and was granted a religious exemption to the Mandate, but was denied accommodation and was terminated on February 2, 2022. Plaintiff Carswell performed all of his work alone in his patrol vehicle outdoors. As an ARFT, Mr.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

Carswell commonly worked solo in fire trucks. He did not transport any medical patients and has little interaction with the public. Much of his administrative work was capable of being performed remotely. He had at most minimal interaction with the public, and he was able to use N95 masks and social distancing during such interaction. No COVID-19 infection or transmission was ever traced to the Plaintiff. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship they would have suffered had they accommodated him. Mr. Carswell had demonstrated natural immunity to COVID-19 prior to termination.

225. Plaintiff Christopher Champagne was a Deputy Sheriff. He applied for and was granted a religious exemption to the Mandate, but he was denied accommodation and was terminated on January 21, 2022. Plaintiff Champagne performed all of his work alone in his patrol vehicle outdoors. Much of his administrative work was capable of being performed remotely. He had at most minimal interaction with the public, and he was able to use N95 masks and social distancing during such interaction. No COVID-19 infection or transmission was ever traced to Plaintiff Champagne. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship they would have suffered had they accommodated him. Mr. Champagne had demonstrated natural immunity to COVID-19 prior to termination.

226. Plaintiff Andy Conner was a Deputy Sheriff. He applied for and was granted a religious exemption to the Mandate, but he was denied accommodation and was terminated on February 15, 2022. Plaintiff Conner performed all of his work alone in his patrol vehicle outdoors. Much of his administrative work was capable of being performed remotely. He had at


ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

most minimal interaction with the public, and he was able to use N95 masks and social distancing during such interaction. No COVID-19 infection or transmission was ever traced to Plaintiff. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship they would have suffered had they accommodated him. Mr. Conner had demonstrated natural immunity to COVID-19 prior to termination. Mr. Conner was rehired with KCSO on December 29, 2023, as a “lateral hire,” and had to undergo a complete rehire process, including polygraph, psychiatric interviews, and background investigation, and has reduced “lateral seniority” only. It was more than a five-month process. He was not reinstated, is currently on a one-year probationary period, and Defendants refused to provide Mr. Conner a lateral bonus even though he is listed as a lateral transfer with the same rights, restrictions, and requirements.

227. Plaintiff Loi Dawkins was a Deputy Sheriff. Applied for both a medical and religious exemption, which were granted (the “Mandate”) but was denied accommodation and was terminated on March 9, 2022. Mrs. Dawkins performed her work alone in her patrol vehicle outdoors. Much of her administrative work was capable of being performed remotely. She had at most minimal interaction with the public and was able to use N95 masks and social distancing during such interaction. Mrs. Dawkins sanitized and disinfected her patrol car, work area and substations. No COVID-19 infection or transmission was ever traced to her. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship they would have suffered had they accommodated her exemptions.

228. Plaintiff Michael Dozario was a Deputy Sheriff. He applied for and was granted a religious exemption to the Covid-19 vaccination mandate (the “Mandate”) but was denied accommodation and was terminated on February 22, 2022. Mr. Dozario performed his work



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

alone in his patrol vehicle outdoors. Much of his administrative work was capable of being performed remotely. He had at most minimal interaction with the public, and was able to use N95 masks and social distancing during such interaction. Mr. Dozario sanitized and disinfected his patrol car, work area and substations. No COVID-19 infection or transmission was ever traced to him. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship they would have suffered had they accommodated his religious exemption.

229. Plaintiff Michael Gocke was a Deputy Sheriff. He applied for and was granted a religious exemption to the Mandate, but he was denied accommodation and was terminated on January 21, 2022. Plaintiff Gocke performed all of his work alone in his patrol vehicle outdoors. Much of his administrative work was capable of being performed remotely. He had at most minimal interaction with the public, and he was able to use N95 masks and social distancing during such interaction. No COVID-19 infection or transmission was ever traced to Plaintiff. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship they would have suffered had they accommodated him.

230. Plaintiff Michael Gould was a Deputy Sheriff. He applied for and was granted a religious exemption to the Mandate but was denied accommodation and was terminated on March 1, 2022. Plaintiff Gould performed all of his work alone in his patrol vehicle outdoors. Much of his administrative work was capable of being performed remotely. He had at most minimal interaction with the public, and he was able to use N95 masks and social distancing during such interaction. No COVID-19 infection or transmission was ever traced to Plaintiff. Defendants conducted no interactive dialogue regarding accommodation and identified no undue



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

hardship they would have suffered had they accommodated him. Plaintiff Gould requested a *Loudermill* hearing but submitted a statement because he was unable to attend. Although he asked for feedback to the questions posed in his statement, he received no reply.

231. Plaintiff Cindy Hale was a Deputy Sheriff. She applied for and was granted a religious exemption to the Covid-19 vaccination mandate (the "Mandate") but was denied accommodation and was terminated on December 15, 2021. Ms. Hale performed all of her work alone in her patrol vehicle outdoors. Much of her administrative work was capable of being performed remotely. She had at most minimal interaction with the public, and she was able to use N95 masks and social distancing during such interaction. Mrs. Hale sanitized and disinfected her patrol car, work area and substations. No COVID-19 infection or transmission was ever traced to her. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship they would have suffered had they accommodated her religious exemption.

232. Plaintiff Jeffrey Hancock was a Deputy Sheriff/Detective. He applied for and was granted a religious exemption from the Mandate but was denied accommodation and was forced to retire under duress on December 13, 2021. Mr. Hancock requested to take the Novavax vaccine in his accommodation request but was told he would not be allowed to take it. He also requested daily testing, but was told it was too costly, despite the federal funds King County received for COVID relief. Mr. Hancock literally begged for a decision from Defendants regarding his accommodation request but was simply ignored. Plaintiff Hancock performed a majority of his work outdoors, alone, in his patrol car. No COVID-19 infection or transmission was ever traced to him. Defendants conducted no interactive dialogue regarding accommodation



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

and identified no undue hardship they would have suffered had they accommodated Plaintiff. Mr. Hancock had demonstrated natural immunity to COVID-19 prior to termination.

233. Plaintiff Patrick Kearney was a Deputy Sheriff. He applied for and was granted a religious exemption to the Covid-19 vaccination mandate (the "Mandate") but was denied accommodation and was retired under protest on January 28, 2022. Mr. Kearney performed all of his work alone in his patrol vehicle outdoors. Much of his administrative work was capable of being performed remotely. He had at most minimal interaction with the public, and was able to use N95 masks and social distancing during such interaction. Mr. Kearney sanitized and disinfected his patrol car, work area and substations. Mr. Kearney has demonstrable natural immunity to COVID-19 when separated from the department. No COVID-19 infection or transmission was ever traced to him. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship they would have suffered had they accommodated his religious exemption.

234. Plaintiff Gabrion Kisler was a Deputy Sheriff. He applied for and was granted a religious exemption to the Mandate, but he was denied accommodation and was terminated on March 1, 2022. Plaintiff Kisler performed all of his work alone in his patrol vehicle outdoors. Much of his administrative work was capable of being performed remotely. He had at most minimal interaction with the public, and was able to use N95 masks and social distancing during such interaction. No COVID-19 infection or transmission was ever traced to him. Mr. Kisler had demonstrable natural immunity to COVID-19 when separated from the Department. Defendants conducted no interactive dialogue regarding accommodation and identified no undue



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

hardship they would have suffered had they accommodated him. Mr. Kisler had demonstrated natural immunity to COVID-19 prior to termination.

235. Plaintiff Cameron Lefler was a Deputy Sheriff. He applied for and was granted a religious exemption to the Mandate, but was denied accommodation and retired under protest on February 1, 2022. Plaintiff Lefler performed his work alone in his patrol vehicle outdoors. Much of his administrative work was capable of being performed remotely. He had at most minimal interaction with the public and was able to use N95 masks and social distancing during such interaction. No COVID-19 infection or transmission was ever traced to him. Mr. Lefler had demonstrable natural immunity to COVID-19 when separated from the Department. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship they would have suffered had they accommodated him.

236. Plaintiff Patrick McCurdy was a Deputy Sheriff. He applied for and was granted both a religious exemption, but was denied accommodation, and was terminated on January 26, 2022. Mr. McCurdy was able to retire under duress effective February 2, 2022, utilizing his own sick and vacation leave in anticipation of termination and retirement. Plaintiff McCurdy performed all of his work alone in his patrol vehicle or outdoors. He had at most minimal interaction with the public and was able to use N95 masks and social distancing during such interaction. No COVID-19 infection or transmission was ever traced to him. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship


ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

they would have suffered had they accommodated Mr. McCurdy. Mr. McCurdy also had demonstrated natural immunity to COVID-19 prior to termination.

237. Plaintiff Jeremy Muir was a Deputy Sheriff. He applied for and was granted a religious exemption to the Mandate, but he was denied accommodation and was terminated on February 2, 2022. Plaintiff Muir performed all of his work alone in his patrol vehicle outdoors. Much of his administrative work was capable of being performed remotely. He had at most minimal interaction with the public, and was able to use N95 masks and social distancing during such interaction. No COVID-19 infection or transmission was ever traced to him. Mr. Muir had demonstrable natural immunity to COVID-19 when separated from the Department. Defendants conducted no interactive dialogue regarding accommodation and identified no undue hardship they would have suffered had they accommodated him.

238. Plaintiff Gwen Nesbitt was an Administrator II. She applied for and was granted a religious exemption to the Mandate, but she was denied accommodation and was terminated on March 1, 2022. By the time Ms. Nesbitt was terminated in March, OSHA had already withdrawn the Emergency Temporary Standard of mandatory vaccinations in the workplace the previous January. Ms. Nesbitt was able to perform her job 100% remotely but was offered no accommodation. In fact, at the time of her termination, meetings were still being conducted via ZOOM. Additionally, masks were optional for everyone prior to termination, but Defendants claimed Plaintiff was so dangerous, she had to be terminated. Ms. Nesbitt had demonstrated natural immunity to COVID-19 prior to termination. Ms. Nesbitt's manager did not agree with the denial of accommodation but was never involved in the process of discussing Ms. Nesbitt's essential job functions, work environment, or potential accommodations available. No COVID-



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

19 infection or transmission was ever traced to her.

239. Plaintiff Megan Roberts was a KCSO Sergeant who served at all material times as a contract City Police Chief for Covington Police Department. Covington Police Department, as well as the City Manager, Regan Bolli, fully accommodated Ms. Roberts; it was the actions of Defendants that caused her termination. Ms. Roberts submitted requests for both a religious exemption and a medical exemption from the Mandate, and was granted a religious exemption but was denied accommodation and was terminated on February 2, 2022, without interactive dialogue regarding accommodation about her position, duties, and potential accommodation. Defendants allegedly lost her supporting medical information from two different providers, and failed to process her medical exemption request until after Ms. Roberts was terminated. KCSO briefly rehired her after she asked about her medical exemption request, but then terminated her again on July 22, 2022: Defendants rejected her medical exemption request, despite the opinion of her treating physician. Ms. Roberts has a long-documented autoimmune disorder that can be fatal; the CDC had publicly stated that "people with autoimmune disorders should be aware that there are no safety data on vaccines." Ms. Roberts' had merely asked to be allowed to wait until there was sufficient data to assess the risk of the vaccination. Defendants justified Ms. Roberts' termination by categorizing her as a KCSO sergeant, which misrepresented her role. She was a contract Police Chief, who did not perform the same functions as a typical KCSO sergeant. She typically worked alone at home or in a building separate from Defendants under the leadership of the City of Covington, which fully supported her accommodation request. No COVID-19 infection or transmission was ever traced to her. Ms. Roberts' original firing memo indicated that she could be reinstated within two years of previous position, or could be eligible for



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

"reassignment program" which included "priority placement" if vaccine criteria is met. However, after the Mandate was lifted, Defendants denied Ms. Roberts reinstatement because they stated that those options expired with the lifting of the mandate.

240. Plaintiff Timothy Sigel was a Patrol Sergeant. He applied for and was granted a religious exemption and a medical exemption from the Mandate but was denied accommodation and was forced to retire under duress on December 29, 2021. Mr. Sigel had demonstrated natural immunity to COVID-19 prior to termination. Plaintiff performed his work alone in his patrol vehicle or outdoors. He had at most minimal interaction with the public, and he was able to use N95 masks and social distancing during such interaction. No COVID-19 infection or transmission was ever traced to him. Defendants conducted no interactive dialogue regarding accommodation with him and identified no undue hardship they would have suffered had they accommodated Mr. Sigel.

241. The parties were intended beneficiaries of a collective bargaining agreement their union entered into with the County and the Department (CBA).

242. The CBA provided terminating employment could only be for just cause.

243. The CBA did not require compliance with the County's Get Vaccinated, Accommodated, or be Terminated Policy for any Plaintiff to continue their respective public employments.

244. Beginning in August 2021, all Plaintiffs except one applied for a religious



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

exemption. Two, at least, also applied for a medical exemption.[1]

245. These Plaintiffs provided Defendants documentation of their sincerely held religious belief, then waited for Defendants to make their decision to grant a religious exemption.

246. The "next step" simply involved a unilateral conclusion by Defendants that each Plaintiff's job was public facing based on a job description that Defendants unilaterally reviewed.

247. Plaintiffs were told they could have a pre-deprivation hearing, but it was inadequate for the reasons previously explained. In addition, Plaintiffs were informed they could

248. In most cases, the Plaintiffs' concerns were channeled through email with the County and Department using an unidentified email address.

249. Just about every Plaintiff received the same *pro forma* email stating they were presumed to have a sincerely held religious belief, but were denied a religious accommodation.

Defendants never conducted an interpersonal interactive dialogue regarding accommodation.

250. Even Plaintiffs who re-directed their concerns and requests for status updates to named individuals were never given a substantive answer to their concerns or updates.

251. In fact, Plaintiff Jason Brunner specifically asked a King County employee, Diane Taylor, who identified herself as a "legal advisor," to explain the threat that unvaccinated Deputies presented and whether this same analysis of threat level was being applied with equal

[1] Plaintiffs Timothy Sigel and Megan Roberts each applied for and were granted both a religious and medical exemption but denied permanent accommodation for both and were terminated. Plaintiffs Joshua Carswell and Michael Dozario each exercised their constitutional right to privacy and bodily autonomy did not file an exemption. Each were terminated in violation of their rights to autonomous decision-making, due process, breach of their employment contract, and violation of the "taking clause" of the U.S. and Washington State constitutions.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

vigor to the vaccinated, who were continuing to transmit and infect the virus. Mr. Brunner was specifically told at that meeting that no process of analysis was being performed regarding the threat unvaccinated Deputies posed, and that no analysis was done of the threat level the vaccinated performed because it was unnecessary.

252. Similarly, Plaintiff Roberts specifically asked for clarification regarding the threat she posed, the cost incurred for any burden, and asked for consideration that neighboring jurisdictions in Oregon were accepting and accommodating government employees, specifically police and firefighters, and not terminating them. She received no meaningful discussion but was specifically told that the purpose of the pre-deprivation hearing was did not permit her to discuss those issues.

253. Plaintiff Wayne Goding requested an accommodation that would have allowed him to work remotely answering all phone police reports but was denied even consideration without explanation. A Public Records Request at a single precinct revealed that for the four months prior to Mr. Goding's termination, significant number of calls would have justified this.

254. Each Plaintiff was fully capable of performing all essential functions of their job unvaccinated and posed no more risk to become infected or transmit the virus than their unvaccinated counterparts.

255. Dr. Chris Murray, Director of the Institute for Health Metrics and Evaluations (IHME) and Chair of Health Metrics Sciences at the University of Washington, stated in an


ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

interview with Meghna Chakrabarti, host of NPR's On Point,[2] that studies conducted prior to the termination of Plaintiffs found "protection from natural immunity is equivalent or actually slightly better than two doses, specifically of the mRNA vaccine," did not surprise him.

256. In in August 2021, an Israeli study was published that concluded exceedingly low reinfection rates for people previously infected with COVID-19. [3] These positive tests were historical and were presented after full recovery. Most interestingly, the Israeli scientists found people who receive both doses of the EUA-approved Pfizer shot were up to 13 times more likely to contract the virus than those who were previously infected with the virus, and that "natural immunity convers longer lasting and stronger protection against infection.

257. One month after his continued public employment was, Deputy Wayne Goding received a subpoena from the King County Prosecutor's office commanding him to appear in District Court to testify in a case. The letter stated that the "King County Sheriff's Office has no objection to you appearing on its behalf in this matter," and Mr. Goding was instructed to contact the Legal Unit if he had any questions.

258. Deputy Goding contacted the Legal Unit and asked why he was considered a public health hazard and had to be terminated, but no longer posed that threat to enter a District Court. King County Chief Legal Advisor Erin Overbey stated, the Department is not in a position to impose terms or conditions related to testimony in district court or to engage in risk

---

[2] https://www.wbur.org/onpoint/2023/03/08/understanding-the-impact-of-natural-immunity-to-covid-19-on-u-s-health-and-politics?mkt_tok=NTI3LUFIUi0yNjUAAAGKedF7YcGYnuVSfof9MkDb_0n-FRFrzIKBsRIUnNFkUzwgUnva4jDaunex_vDZVXd3SgK1R1g5rkKHHgTw_5UQdOYAdMJ0EP-alyCvHLo1-A aired March 8, 2023 (last visited January 30, 2024).

[3] *See* Svian, Gazit, et al., *Comparing SARS-CoV-2 natural immunity to vaccine-induced immunity: reinfections versus breakthrough infections, medRxiv* https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1 (last visited January 30, 2024).



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

assessment."

259. Mr. Goding sought an answer to this inconsistency from the prosecutor and received no answer. Mr. Goding was forced to enter the courthouse, sit in a busy hallway with three other uniformed deputies and the public for approximately four hours, was released, and returned again that afternoon. Mr. Goding was not asked to wear a mask, distance, or even asked his vaccination status.

260. A statement from CDC Director Rochelle P. Walensky, MD, MPH, was issued and publicly available on the CDC website on July 30, 2021, before Washington Governor Jay Inslee's Proclamation 21-14 *et seq.,* that stated, "…data were published in CDC's Morbidity and Mortality Weekly Report (MMWR) demonstrating that Delta infection resulted in similarly high SARS-CoV-2 viral loads in vaccinated and unvaccinated people. High viral loads suggest an increased risk of transmission and raised concern that, unlike with other variants, **vaccinated people infected with Delta can transmit the virus."**

261. Recorded "breakthrough" cases (fully vaccinated individuals contracting COVID-19) in Washington State from July 17, 2021, to July 9, 2022, alone totaled 636,766, with a majority of these breakthrough cases in the 20-49 years age group (74 percent).

262. The CDC also released a complete report of rising breakthrough cases in a report dated August 13, 2021, that was also recognized by the Washington State Department of Health (DOH) in a news release recognizing extensive breakthrough cases recognized as early as March 29, 2021.

263. These findings were also supported by retrospective cohort studies of vaccinated


ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

persons with Pfizer in large health care systems, also cited by the CDC, which concluded that there was a 2.3-fold increased risk of breakthrough infection among persons vaccinated during that same period, and a higher breakthrough infection rate among those who received a second dose within a certain period.

264. The CDC report noted “increased transmission,” but also “potential reduced antibody efficacy, and that, with respect to the Delta variant, “[f]ully vaccinated people with Delta breakthrough infections can spread virus to others.”

265. At the August 13, 2021, public Town Hall webinar, Dr. John Lynch, Medical Director of Harborview’s Infection Control, and Professor, Department of Medicine, Division of Allergy & Infectious Diseases, discussed an outbreak of 230 health care workers at UCSF over the summer, where 75-80% were fully vaccinated. This data was available to Defendants.

266. Staff messages within the Department recognized the breakthrough rate of COVID-19 infections in a fully vaccinated work force, causing staffing hardships.

267. This staffing crisis not only reduced the level of services to the citizens of Washington, it also resulted in payouts of massive overtime, as well as the initiation of a large retention, hiring, lateral transfer and referral bonus system to exacerbate the problem Defendants created. Interim Sheriff Patti Cole-Tindall recognized “staffing is critical right now” in January 2022, the same time the Department was terminating healthy Deputies, including Plaintiffs.

268. Sick records confirm vaccinated Department employees tested positive for COVID.,

269. Plaintiff Conner presented Defendants with a 35-page document with 49



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

attachments prior to his pre-deprivation hearing that published breakthrough study cases, but received no reply and was effectively ignored. There was no suggestions or even a legitimate discussion at these hearings.

270. Defendants were aware of numerous co-workers of Plaintiff Gould who experienced breakthrough infections.

271. During the August 13, 2021, webinar Dr. Santiago Neme, recently promoted as the new UWMC Medical Director, likewise stated that, "[w]e know that vaccinated people can…get infected and we also know that they can transmit to others."

272. At the August 20, 2021, Town Hall webinar, Dr. Seth Cohen, Medical Director of Infection Prevention, after acknowledging "all of the breakthrough cases that we've had," and stated "the vaccines are really designed to prevent disease, not infection[,]" and admitting that "all these breakthrough infections are really community acquired infections,"

273. A peer-reviewed May 2021 published study of breakthrough infections of COVID-19 in Washington State, co-authored by three UW physicians,[4] found that the vaccine did not stop their own newly vaccinated staff from catching new strains of COVID-19, with the earliest COVID-19 diagnosis 39 days after the second shot in February 2021. It further provided, "Across 20 vaccine breakthrough cases detected at our institution, all 20 (100%) were due to variants of concern (VOC)…. When compared to 5,174 contemporaneous samples sequenced in our laboratory, VOC were significantly enriched among breakthrough infections."

274. Many Plaintiffs had personal knowledge of co-workers who had been

---

[4] Seth Cohen, Chloe Bryson-Cahn, John Lynch.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

experienced breakthrough infections, and they communicated their knowledge to the Defendants.

275. Defendants expressed animus toward Plaintiffs and the other religious exempt Department employees. The themselves called and permitted other Department and County employees to call Plaintiffs and the other religious exempt Department employees "colossally stupid," for preferring to adhere to their sincerely held religious beliefs over getting fully vaccinated.

276. On July 16, 2021, King County Public Health staff were notified of a staff party wherein fully vaccinated individuals tested positive for COVID-19 after the staff party.

277. Shortly thereafter, Jeffrey Duchin, Chief Communicable Disease Epidemiology and Immunization Section, Public Health for Seattle and King County, and Professor of Medicine, Division of Infectious Diseases, University of Washington, and a member of the CDC Advisory Committee on Immunization Practice (ACIP), admitted that 37% of new cases of COVID-19 were amongst vaccinated individuals.

278. Dr. Duchin also acknowledged awareness of the well-publicized COVID-19 outbreak in Provincetown, Massachusetts, after a Fourth of July celebration, where according to Steve Katsurinis, chair of the Provincetown Board of Health, 469 cases reported among Massachusetts residents alone, 74 percent were in people who were fully immunized**.** That number grew to 765 cases overall.

279. Snohomish County recognized the failure of the vaccine to contain the spread of the virus, stating on July 30, 2021, "The stellar individual protection afforded by vaccination is



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

no longer, nor is the dream of getting out from under COVID on July 1…the vaccine effectiveness is clearly no longer what it was just a couple of months ago and folks should manage themselves accordingly."

280. The data also calls into question Defendants' disparate treatment of religious objectors compared with secular employees.

281. Medical and religious objectors presented the same threat unvaccinated, but medical objectors were admittedly accommodated by Defendants, while religious objectors were specifically not accommodated.[5]

282. Instead of mandating the taking of a vaccine that was failing, "rates and relative risk provide a clearer picture," of virus containment, which Defendants did not consider in its blanket policy that all religious objectors must be vaccinated.

283. The Defendants knew or should have known that their basis for terminating each of the Plaintiffs – that the Plaintiffs allegedly posed a danger in their unvaccinated state – was a faulty premise given specific knowledge of breakthrough cases, particularly relative to the percentage of employees seeking accommodation, and specific knowledge of low mortality among less vulnerable populations and higher rates of mortality among the vaccinated.

284. Defendants' failure to study all data, studies, and events produced a biased narrative that eliminated balancing the risk of infection from being unvaccinated with any

[5] The arbitrary nature of Defendants' policy in terminating without accommodation consideration is contrary to the position taken at a majority of agencies and other businesses across the state. A majority of hospitals and clinics across the state accommodated even health care workers, who have intimate physical contact with vulnerable populations. Additionally, a majority of Fire Departments across the state likewise accommodated their firefighters/paramedics, also employees with close physical contact.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

hardship suffered through accommodation.

285. Plaintiffs brought these studies to the attention of Defendants but were ridiculed and chastised for not following the protocol.

286. Defendants utilizing shame and disparagement to shut down anyone who presented contrary studies or sought meaningful discussion of contrary data.

287. This culture of animosity came from leadership, including the individually named Defendants, who directly or indirectly fueled animosity towards those who asserted their religious Free Exercise rights by seeking exemption to and accommodation from the vaccination requirement.

288. The pressure to get vaccinated to alleviate the fears of secular vaccinated individuals, those unable to obtain vaccination for secular reasons, and those accommodated for secular reasons was pervasive in workplace posters and emails, and in communication from Defendant Constantine.

289. Each Plaintiff has multiple stories of coercion to take the shot, harassment for not taking the shot, and/or disparaging comments regarding Plaintiffs' personal decisions to assert their religious freedoms.

290. Plaintiff Jason Brunner experienced severe and repeated harassment from Seth Grant, head of EMT's with the Department, who had authority over Mr. Brunner, as well as authority over other ARFT officers. Mr. Grant mocked those who took the J&J vaccine because Mr. Grant claimed it was clearly inferior; Mr. Grant demanded colleagues tell him whether family members were vaccinated; if a colleague indicated his wife was pregnant and declined



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

the vaccine due to risks, Mr. Grant mocked them for their stupidity in failing to know the vaccine was safe and effective for pregnant mothers, despite admissions that there had been no testing on the effects of the vaccine on babies in utero. Mr. Grant openly ridiculed and mocked not only Mr. Brunner, but other co-workers.

291. At one point, Mr. Grant became so antagonistic, Mr. Brunner felt he would need to physically defend himself from Grant's aggression. Mr. Brunner was approached by individuals who witnessed the personal intrusion by Mr. Grant into Mr. Brunner's personal affairs and asked if they could submit an incident report.

292. Nothing was done about Mr. Grant's continued actions despite Defendants' knowledge of the behavior.

293. Chief Greg Thomas published a notice from Defendant Cole-Tindall that unvaccinated employees were allowed "no use of the workout room unless vaccinated." This restriction was underinclusive where so long as additional physical contact between individuals, the basis of denying accommodation, continued the same day the policy was published restricting Plaintiffs from utilizing the workout room, Chief Thomas sent another email to the unit suggesting a "night at the firehouse" where ARFT employees could bring their families to socialize in a crowded room, with the public and each other.

294. Many Plaintiffs were contacted by Defendants and their agents for the purpose of placing pressure on Plaintiffs to change their sincere religious beliefs, demonstrating a hostility toward religion.

295. In their refusal to consider accommodations for Plaintiffs, Defendants failed to


ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

balance the undue hardships to the citizens of Washington State with their decision to deny accommodations.

296. OFM guidance for granting accommodation *required consideration for issues such as "causes a lack of staffing,"* as well as "[s]ize and operating costs of the business impact of the accommodation on the agency as a whole."

297. OFM guidance required Defendants to consider "safety concerns and security consideration." *Id.*

298. Defendants utilized a free app connected to all dispatch centers in King County to send alerts to individuals with the app to locations within a quarter mile of the app holders home to respond to a distress call. There was no requirement that the individual be vaccinated. "There is no requirement for [app] subscribers to know CPR."

299. Staffing problems created by the "sudden separation of a number of deputies in the fall due to the vaccination mandates" were well known as Defendants were allegedly considering accommodations, including massive overtime costs. Instead of engaging in a net burden analysis of the cost of termination, Defendants merely engaged in crisis reaction through redeployment efforts, service restrictions, and development of an undisclosed "pilot program" for testing.

300. Contemporaneous with, and after, the separation of the Plaintiffs from their public employment, KCSO was party to mutual aid agreements with multiple law enforcement agencies within King County that did not require vaccination.

301. While crime, and the need to provide services to the public, remained constant,



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

or increased during all time relevant, KCSO suffered a staffing shortage.

302. The staff shortage necessarily meant that other law enforcement agencies within King County would have to fill the vacuum created by the separation of Plaintiffs, and other similarly situated law enforcement officers, some of whom were unvaccinated and/or not subject to any vaccine requirement.

303. On information and belief, KCSO did nothing to ensure that other law enforcement agencies within its geographical borders maintained a full vaccinated force.

304. Due to Defendants' actions, Plaintiff has found it necessary to hire the services of the undersigned counsel and has agreed to pay them a reasonable fee for their services.

## V. <u>FIRST CAUSE OF ACTION</u>

305. Plaintiffs reallege the allegation in this Complaint.

306. This is a claim against Defendants pursuant to 42 U.S.C. § 1983 in their official and personal capacities and against Defendant KC because it is not an arm of the State entitled to sovereign immunity and is a "person" for purposes of 42 U.S.C. § 1983.

305. The individually named Defendants personally and integrally participated in violating Plaintiffs' fundamental constitutional rights contained in the Free Exercise Clause of the United States Constitution.

307. The individual defendants personally and integrally participated in creating, concocting, and executing, an accommodation decision making process used when making accommodation decisions.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

308. The accommodation decision making process included a mechanism by which Defendants and other KC employees could make individualized accommodation decisions that were tantamount to adverse employment decisions.

309. The individualized accommodation decision making process inherently gave the Defendants and the other KC employees the discretion to decide who to accommodate and who not to accommodate.

310. Defendants wielded, and directed other KC employees to wield, the inherent power and control defendant Constantine built into the mechanism to make individualized accommodation decisions to grant religious accommodations as strict as possible; while, at the same time, making it easier to grant secular accommodations.

311. Defendants' accommodation decision making process that these Defendant created, used, and directed others to use, was not generally applicable to all KC's exempt employees seeking accommodation.

312. A primary motivation driving these Defendants to integrally participate in creating, using, and directing other KC employees to use the mechanism for individualized accommodations decisions, the associated discretion, and the inherent power and control, was to coerce KC's religiously exempt employees into getting vaccinated because if they did not, then they would lose their continued public employment and their livelihoods. This had a chilling effect on them and others to their free exercise rights.

313. These Defendants created, used, and directed other KC employees to use their discretionary power and control inherent in the mechanism to make individualized


ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

accommodation decisions to coerce KC's religiously exempt employees, including Plaintiffs, to abandon their sincerely held religious beliefs and get vaccinated.

314. These Defendants accomplished their discriminatory objective by using, and directing others to use, the inherent power and control to give KC's religiously exempt employees only a Hobbesian choice of getting vaccinated or losing their job. They did not do the same at the same rate for KC's secularly exempt employees.

315. KC's accommodation decision making process that these Defendant created, used, and directed others to use, to fulfill the discriminatory objective was not applied neutrally amongst all KC's exempt employees.

316. Because the accommodation decision making process was neither neutral nor generally appliable, the Defendants' and KC's accommodation decisions are subject to strict scrutiny and are only constitutional if they are narrowly tailored to serve a compelling government interest.

317. There were less restrictive alternatives other than coercing religiously exempt employees from abandoning their sincerely held religious beliefs and getting vaccinated to reduce the transmission and spread of the COVID-19 virus.

318. Continuing the existing protective measures of testing, making, and social distancing requirements were equally effective as was getting the Vaccine to stem the virus's spread.

319. It was widely known and accepted that the COVID-19 spike in 2021 included a statistically significant number of cases where a previously vaccinated person became reinfected



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

with the delta variant.

320. The Vaccine is not a traditional vaccine, which is commonly known as a sterilizing vaccine that provides immunity to its recipient. Immunity prevents the recipient from becoming reinfected. A sterilizing vaccine, therefore, is effective to stem the spread of a contagious disease like COVID-19.

321. Instead, the Vaccine is an mRNA vaccine, which is commonly known as a non-sterilizing vaccine. Unlike a sterilizing vaccine that provides its recipient with immunity, a non-sterilizing vaccine does not; and can permit its recipient to become reinfected.

322. The non-sterilizing mRNA Vaccine injects a spike protein that attaches to cells in a person's body that causes an immune response creating antibodies; it does not provide its recipient with immunity, and they can, and do, become infected and/or reinfected.

323. In 2021 outbreak infections were documented and reported. Prior to the Proclamation being proclaimed on August 9, 2021, it was widely known and accepted vaccinated people were reinfected with and transmitting the delta variant.

324. The data that had been gathered by the time Plaintiffs were terminated by the CDC, the State of Washington, private and public researchers, and epidemiologists and others converged on a common understanding, which was later confirmed as being accurate, that getting the Vaccine did little to stem the virus's spread.

325. Prior to the Defendants promulgating and enacting its policy the ineffectiveness of the Vaccine to stem the spread of the delta variant was known by KC.

326. Based on information and belief, the State Department of Health, the State's



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

University of Washington researchers and medical professionals, Defendants, and others within the State and KC, knew about the vaccines' ineffectiveness prior to and while the Defendants were creating, using, and directing other KC employees to use the mechanism for individualized accommodation decisions in a religiously discriminatory manner.

327. When Defendants were using and directing other KC employees to use the mechanism for individualized accommodation decisions in a religiously discriminatory manner there were less restrictive alternatives other than getting a Vaccine that would equally or better serve the State's proffered interest of stemming the virus's spread.

328. Increasing testing frequency would have better served the State's interest. An infected (or reinfected) person is most virulent and, thus, more likely to transmit the virus prior to becoming symptomatic (getting sick). Early detection of infection or reinfection, therefore, would be more effective to stem the spread of the virus than getting a Vaccine.

329. Additionally, employees who had natural immunity were the least likely employees to spread the virus if they were to have contact with persons or perform forward facing job functions. Despite this, KC's accommodation decision making process did not factor natural immunity into its accommodation decisions.

330. Given the widely reported and accepted knowledge that was either known or available, the existing safety measures of donning PPE, testing, social distancing, telework, and the other measures that these Defendants instituted to successfully reduce the spread of the virus for the prior 18 months were equally effective to stem the spread of the virus as was getting the Vaccine.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

331. These Defendants did not consider these less restrictive alternatives when deciding to give KC's religiously exempt employees only the Hobbesian choice to either get vaccinated or lose your job.

332. There were also less draconian adverse employment actions that would have equally served the State's proffered interest but would have been less coercive on Plaintiffs and the other KC employees who held a sincerely held religious belief that conflicted with them getting the Vaccine that could have, should have, but were not offered to the religiously exempt employees. They include leave without pay, suspension, voluntary or involuntary reassignments of public-facing work to non-exempt vaccinated or naturally immune workers, continued telework, and reduction in work hours.

333. These Defendants did not consider these less coercive alternatives when deciding to give Plaintiffs and the other religious KC employees only the Hobbesian choice to get vaccinated or lose your job.

334. The State's and KC's actions to stem the spread of COVID-19 were also underinclusive because they did not regulate conduct that presented the same or greater risk of spreading COVID-19 as did requiring Plaintiffs to get vaccinated.

335. The accommodation decisions Defendants and the other KC's employees they directed made for Plaintiffs were not narrowly tailored to achieve the State's proffered interest for imposing the Vaccine Mandate as stated in the Proclamation.

336. Defendants infringed on all religiously conflicted KC's employees' fundamental constitutional rights to freely exercise their sincerely held religious beliefs which are guaranteed


ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

under the Free Exercise Clause of the U.S. Constitution's First Amendment made applicable to the individual states, including the State of Washington, by the U.S. Constitution's Fourteenth Amendment.

337. By June 17, 2021, the United States Supreme Court made clear that a COVID-19 restriction that infringes on a person's Free Exercise rights that either or both: has a mechanism by which to make individualized determinations or that treats a person differently and less favorably based on their religious beliefs is not generally applicable and, therefore, subject to strict scrutiny.

338. Starting in late 2020 and continuing into 2021 and for certain by June 17, 2021, all nine justices of the United States Supreme Court made clear that strict scrutiny applied to government action that infringed on a person's Free Exercise rights when they were not neutral facially or as applied or when they were not generally applicable because they either provided a mechanism for individualized determinations or because they treated religious activity differently and less favorably than secular activity.

339. Starting in late 2020 and by April 17, 2021, the United States Supreme Court made clear that strict scrutiny applied to COVID-19 pandemic emergency government actions that responded to the crises caused by the COIVD-19 pandemic if those government actions infringed on a person's Free Exercise rights.

340. By June 17, 2021, any reasonable government official, including these Defendants, either knew or should have known that creating, using, and directing others to use a mechanism for individualized determinations intentionally to treat religious observant persons



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

differently and less favorably than their secular similarly situated counterparts would be subject to strict scrutiny and unconstitutionally wrong unless it was narrowly tailored to achieve a compelling government interest.

341. Any reasonable government official, including these Defendants, either knew or should have known that Defendants' actions were not narrowly tailored to achieve the State's proffered interest of stemming the spread of the COVID-19 virus and was, therefore, unconstitutionally wrong, and illegal.

342. These Defendants' integral participation in creating, using, and directing other KC employees to use the mechanism to make individualized accommodation decisions set in motion a series of unbroken events that resulted in the U.S. Constitutional violations described herein and those constitutional violations directly and proximately caused each Plaintiff economic and noneconomic harm.

343. Plaintiffs are entitled to compensatory damages against Defendant Constantine in his personal capacities pursuant to 42 U.S.C. § 1983.

344. Defendants acted willfully, intentionally, or recklessly and with callous disregard of Plaintiff's constitutional rights.

345. Plaintiffs are entitled to punitive damages against Defendants.

346. Plaintiffs have been and continue to be irreparably harmed due to their ongoing separation from their continued public employment and livelihood. They should be reinstated to their former position at KC.

347. Plaintiffs are entitled to their attorney fees and expanded costs pursuant to 42



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

U.S.C. § 1988.

## VI. SECOND CAUSE OF ACTION

345. Plaintiffs reallege all prior allegations in this Complaint.

346. This is a claim against Defendants for declaratory relief that they violated the Freedom of Religion Clause in the Washington Constitution and reinstatement to their respective former positions.

347. The Washington State Constitution, Article I, § 11 states, "Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion…No religious qualification shall be required for any public office or employment."

348. The Washington State Constitution's Free Exercise of Religion Clause provides greater religious freedom protection than does the United States Constitution.

349. For the same reasons set forth in the preceding First Cause of Action, Defendants violated the Washington State Constitution's Free Exercise Clause.

350. Plaintiffs have been and continue to be irreparably harmed due to their ongoing separation from their continued public employment. They should be reinstated to their former position at KC.

## VII. THIRD CAUSE OF ACTION

351. Plaintiffs reallege all prior allegations in this Complaint.

352. This is a claim against Defendant Constantine in his personal and official



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

capacities and against Defendant KC because it is not an arm of the State pursuant to 42 U.S.C. § 1983 for reinstatement as well as compensatory and punitive damages. Alternatively, if KC is an arm of the State, then it is a claim against Defendant Constantine in his personal and official capacity pursuant to 42 U.S.C. § 1983 only as it relates to Plaintiffs' demand for reinstatement to their respective former positions. It is a claim against Defendant Constantine in his personal capacity pursuant to 42 U.S.C. § 1983 for compensatory and punitive damages and other monetary relief.

353. The Fourteenth Amendment to the United States Constitution provides no person shall be deprived of life, liberty, or property, without due process of law.

354. A public employee's public employment is a property right that requires procedural due process prior to the employee being deprived of its continuation.

355. Prior to a public employee being deprived of their continued public employment they are entitled to notice of their public employment no longer being continued and a pre-deprivation hearing where they can tell their side of the story and present rebuttal declarations or affidavits.

356. There was no rule that was generally applicable that or properly enacted by the State, OFM, or KC in accordance with Washington's Administrative Procedures Act that provided notice to Plaintiffs or otherwise gave them an opportunity to be heard, including a discussion regarding accommodation, prior to its enactment that provided procedural due process to Plaintiffs.

357. Defendant Constantine personally participated in creating KC's accommodation



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

decision making process that did not provide Plaintiffs with a meaningful opportunity to be heard prior to Defendants and those that they directed at KC discontinuing each Plaintiff's public employment by instituting agency action for an involuntary non-disciplinary separation from their public employment.

358. Defendants were in a position to provide a pre-deprivation hearing that comported with procedural due process but omitted to act when they had a duty to do so.

359. Any reasonable government official, including these Defendants, either knew or should have known that Plaintiffs were public employees who had a recognized property right in their public employment and were entitled to a pre-deprivation hearing to tell their side of the story and provide rebuttal declarations or affidavits.

360. Any reasonable government official, including these Defendants, either knew or should have known that instituting agency action that involuntarily discontinued Plaintiffs' public employment without providing them the required pre-deprivation hearing violated the U.S. Constitution's Procedural Due Process Clause in the Fourteenth Amendment in the United States Constitution because that law was clearly established when Defendants acted and failed to act while having a duty to do so.

361. Defendant Constantine's integral participation in creating, using, and directing other KC employees to use the accommodation decision making process to not allow Plaintiffs to have a meaningful opportunity to tell their side of the story and present rebuttal affidavits or declarations and otherwise not providing them a pre-deprivation hearing prior to discontinuing their public employment set in motion an unbroken series of events that resulted in the U.S.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

Constitutional violations described herein and those constitutional violations directly and proximately caused each Plaintiff economic and noneconomic harm.

362. Plaintiffs are entitled to compensatory damages against Defendant Constantine in their personal capacities pursuant to 42 U.S.C. § 1983.

363. Defendants acted willfully, intentionally, or recklessly and with callous disregard of Plaintiffs' constitutional rights.

364. Plaintiffs are entitled to punitive damages against Defendants.

365. Plaintiffs have been and continue to be irreparably harmed due to their ongoing separation from their continued public employment. They should be reinstated to their former position at KC.

366. Plaintiffs are entitled to their attorney fees and expanded costs pursuant to 42 U.S.C. § 1988.

## VIII. <u>FOURTH CAUSE OF ACTION</u>



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

367. Plaintiffs reallege all prior allegations in this Complaint.

368. This is a claim against Defendants for declaratory relief that they violated the due Process Clause in the Washington Constitution and reinstatement to their respective former positions.

369. The Washington State Constitution, Article I, § 3 provides "[n]o person shall be deprived of life, liberty, or property, without due process of law."

370. The Washington Constitution provides the same or greater procedural due process protection than does the U.S. Constitution's Procedural Due Process Clause.

371. For the same reasons Set forth in the preceding Third Cause of Action, all Defendants violated the Washington State Constitution's Procedural Due Process Clause.

372. Plaintiffs have been and continue to be irreparably harmed due to their ongoing separation from their continued public employment. They should be reinstated to their former position at KC.

## IX. FIFTH CAUSE OF ACTION

373. Plaintiffs reallege all prior allegations in this Complaint.

374. This is a claim against Defendant Constantine in their personal and official capacities and against Defendant KC because it is not an arm of the State pursuant to 42 U.S.C. § 1983 for reinstatement as well as compensatory and punitive damages. Alternatively, if KC is an arm of the State, then it is a claim against Defendant Constantine in their personal and official capacity pursuant to 42 U.S.C. § 1983 only as it relates to Plaintiffs' request for reinstatement to their respective former positions. It is a claim against Defendant Constantine in their personal



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

capacity pursuant to 42 U.S.C. § 1983 for compensatory and punitive damages and other monetary relief.

375. The Equal Protection Clause in the United States Constitution's Fourteenth Amendment to the United States Constitution prohibits classifications that affect some groups of citizens differently than others.

376. Plaintiffs are members of a class of KC service providers who Defendants knew claimed they sincerely held a religious belief that conflicted with their ability to get the Vaccine and could perform the essential functions of the services they were hired to provide without entering KC's facilities.

377. Defendants treated Plaintiffs differently and less favorably than similarly situated providers who were not subject to the Vaccine Mandate for a secular reason.

378. Defendant Constantine integrally participated in actions that treated Plaintiffs and other religiously conflicted KC employees differently and less favorably than their similarly situated counterparts who were exempt from the Vaccine Mandate for a secular reason.

379. In particular, Defendants made the ability for Plaintiffs and other religiously exempt KC employees to be granted a religious accommodation as strict as they could while making it easier for secularly exempt KC employees to be granted an accommodation. They terminated the two Plaintiffs who did not complete the religious accommodation request form



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

while allowing them to be exempted from the Vaccine Mandate as they did other service providers.

380. A primary motivation for Defendants' actions was to discriminate against those who were adherents to their faith based on Defendants' animus they had toward tolerating sincerely held religious beliefs to be exempted from the Vaccine Mandate to the same extent as other service providers who were exempted for a secular reason.

381. Workers who want to freely exercise their sincerely held religious beliefs are members of a suspect class because they have been historically discriminated against.

382. Free Exercise of Religion is also a fundamental constitutional right steeped in the traditions of our country.

383. The disparate treatment afforded the two classes of KC service providers must withstand strict scrutiny to be constitutional.

384. To withstand strict scrutiny the disparate treatment must be narrowly tailored to achieve a compelling State interest.

385. The State interest was to stem the spread of COVID-19.

386. The disparate treatment between these two classes of KC service providers is not narrowly tailored to serve the State's proffered interest.

387. Any reasonable government official or state administrative agency that is not an arm of the State either knew or should have known that treating these two classes of exempt unvaccinated employees differently and the Plaintiffs' class less favorably for reasons primarily



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

motivated by religious animus is unconstitutional and violative of the US. Constitution's Equal Protection Clause.

388. Defendant Constantine's integral participation in treating these two classes of exempt unvaccinated employees differently and the Plaintiffs' class less favorably for reasons primarily motivated by religious animus set in motion an unbroken series of events that resulted in the U.S. Constitutional violations described herein and those constitutional violations directly and proximately caused each Plaintiff economic and noneconomic harm.

389. Plaintiffs are entitled to compensatory damages against Defendants pursuant to 42 U.S.C. § 1983.

390. Defendants acted willfully, intentionally, or recklessly and with callous disregard of Plaintiffs' constitutional rights.

391. Plaintiffs are entitled to punitive damages against Defendants.

392. Plaintiffs have been and continue to be irreparably harmed due to their ongoing separation from their continued public employment. They should be reinstated to their former position at KC.

393. Plaintiffs are entitled to their attorney fees and expanded costs pursuant to 42 U.S.C. § 1988.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

## X. SIXTH CAUSE OF ACTION

394. Plaintiffs reallege all prior allegations in this Complaint.

395. This is a claim against Defendants for declaratory relief that they violated the Equal Protections Clause in the Washington Constitution and reinstatement to their respective former positions.

396. The Washington State Constitution, like the U.S. Constitution, contains an equal protection Clause that prohibits disparate treatment between classes of similarly situated persons unless there is an appropriate reasoned bass for the disparate treatment.

397. Like the U.S. Constitution's Equal Protection Clause, the Washington Constitution's Equal Protection Clause provides heightened scrutiny when the disparate treatment between classes of involves a suspect class that has historically been discriminated against being treated less favorably than the other similarly situated class or when the less favorably treated class members are asserting fundamental constitutional rights.

398. For the same reasons set forth in the preceding Fifth Cause of Action, all Defendants violated the Washington State Constitution's Equal Protection Clause.

399. Plaintiffs have been and continue to be irreparably harmed due to their ongoing separation from their continued public employment. They should be reinstated to their former position at KC.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

## XI. SEVENTH CAUSE OF ACTION

400. Plaintiffs reallege all prior allegations in this Complaint.

401. This is a claim against Defendants for declaratory relief, reinstatement and damages for violating Plaintiffs' right to privacy.

402. The Washington State Constitution, Article I, § 7, provides "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

403. Washington recognizes a private right of tort action for violations of privacy.

404. A person's privacy includes both medical and bodily autonomy.

405. Bodily autonomy includes being free from unwanted bodily intrusions including injections.

406. Unwanted injections are a medical battery.

407. Medical autonomy includes the right to make one's own health care decisions and to be free from unwanted medical treatments.

408. The Vaccine was not a sterilizing vaccine that provided immunity, which prevented infection.

409. It was widely known and accepted before the Governor proclaimed the Proclamation on August 9, 2021, that the vaccine did not prevent its recipient from becoming infected with a breakthrough infection. It, therefore, did not prevent an infected vaccinated



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

person from transmitting or spreading the COVID-19 virus. It also did little or nothing to stem the spread of the delta variant of the COVID -19 virus.

410. Instead, the Vaccine was successful to prevent serious adverse health consequences, hospitalizations, and death once a vaccinated person became infected.

411. As such, it was a medical treatment and not a traditional vaccine.

412. Defendants violated each Plaintiff's rights to privacy when they coerced each Plaintiff to receive an unwanted bodily intrusion and medical treatment by threatening each of them to "Get vaccinated or lose your job."

413. As a direct and proximate result of Defendants' actions each Plaintiff has suffered harm to their privacy and economic damages to avoid the ultimate privacy invasion as well as noneconomic harm.

414. Plaintiffs have also suffered attorney fees and costs as special damages caused by Defendants invading their privacy.

## XII. EIGHTH CAUSE OF ACTION

415. Plaintiffs reallege all prior allegations in this Complaint.

416. This is a claim against Defendants, as "employers" (as that term is defined in WLAD), for intentionally discriminating against Plaintiffs based on their sincerely held religious beliefs, failing to accommodate their religious beliefs, and retaliation for Plaintiffs exercising their WLAD rights to be accommodated for their religious beliefs.

417. Pursuant to the Vaccine Mandate exemption and accommodation decision



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

making process that Defendants were integral in creating, each Plaintiff was granted a religious exemption.

418. Upon being granted a religious exemption from the Vaccine Mandate, Defendants automatically deemed each Plaintiff as having made a request for a religious accommodation that would accommodate them being able to freely exercise their sincerely held belief and not get a Vaccine.

419. Having deemed each Plaintiff as a sincere religious belief, Defendants were obligated to engage in a good faith interactive process with each Plaintiff and discuss reasonable accommodations that were available or could be granted without undue hardship to KC that still served the goal of stemming the spread of COVID-19 and making sure each Plaintiff's essential job functions would still be performed.

420. Defendants failed to engage in a good-faith interactive process with any Plaintiff as required by WLAD.

421. The religiously exempt Plaintiffs requested to engage in the good faith interactive process described in the preceding paragraph, but their requests were ignored and/or rejected.

422. The religiously exempt Plaintiffs proposed reasonable accommodations to Defendants. These proposed accommodations included more frequent testing (and isolation if the test result was positive), considering natural immunity as a substitute for a vaccine, switching performance of public-facing essential job functions (voluntarily or involuntarily), leave without pay, reduction in force, continued use of historically effective PPE, social distancing, and telework.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

423. These proposed reasonable accommodations could be granted without undue hardship to KC.

424. These proposed reasonable accommodations still served the goal of stemming the spread of COVID-19 and making sure each Plaintiff's essential job functions would still be performed.

425. Defendants ignored or rejected any of the proposed accommodations.

426. The stated reason for not allowing alternative reasonable accommodations based on concerns that the accommodations would increase the likelihood COVID-19 would be spread if Plaintiffs were allowed to provide services to KC was a pretext for discrimination against them because they were religious adherent.

427. Defendants expressed religious animus and intolerance to religiously conflicted KC employees, including Plaintiffs.

428. Defendant expressed and erroneous view that people should get a Vaccine when she expressed that it was unacceptable for an unvaccinated KC employee to work at KC and applied that belief more forcefully and with less tolerance against religiously conflicted KC employees.

429. Defendants' noncompliance with WLAD when considering KC's religiously exempt religious accommodation requests were against Washington's public policy because they violated the Plaintiffs' Substantive Due Process and Privacy rights.

430. Defendants' "Get Vaccinated or lose your job" mantra and their fear its religiously exempt employees would "hide behind" their religious exemptions primarily voted



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

their WLAD violations.

431. It was also unconstitutional and violated Washington's public policy by conditioning Plaintiffs' continued public employment on them receiving an unwanted medical treatment.

432. Because the Vaccine was not a traditional sterilizing vaccine, it was unsuccessful in providing immunity and did not prevent reinfection and, therefore, transmission and spread of the virus. As a result, both vaccinated and unvaccinated persons could become infected and, thus, transmit and spread the virus.

433. Instead, the Vaccine was successful in preventing a person who became infected (or reinfected) from developing serious health consequences after being infected. This makes the Vaccine a medical treatment and not a traditional vaccine. The public interest in preventing the spread of a contagious disease is diminished or lost and the efficacy becomes a personal choice of getting injected with spike proteins that alters your DNA and has been associated with myocarditis and pericarditis or not take it and treat it if you become infected with the therapeutics that are available.

434. That decision is a personal decision that involves medical and bodily autonomy and is contained within the U.S. Constitution's fourteenth Amendment when it uses the term liberty and is protected by the right to liberty and privacy that is protected by the Washington State Constitution.

435. Requiring a person to undergo medical treatment they do not want to receive as a condition of their continued public employment is unconstitutional and violates Washington's



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

public policy. Defendants had no right to condition Plaintiffs' continued public employment on them abandoning their sincerely held religious beliefs and them receiving an unwanted medical treatment because he thought it was more important than their religious beliefs.

436. The KC, through responses to Public Records Act requests, has admitted that it performed no financial analysis of the impact of its mandate.

437. The Defendants' WLAD violations directly and proximately caused each Plaintiff to suffer economic and noneconomic damages in an amount be proven at trial which WLAD allows them to recover jointly and severally against Defendants, along with reasonable attorney fees and expenses.

## XIII. NINTH CAUSE OF ACTION

438. Plaintiffs reallege the allegations in this Complaint.

439. All Plaintiffs were employed by KC as permanent full-time employees who could only be terminated for just cause.

440. The employment agreement provided that each Plaintiff could apply for a religious exemption, which all but two of them did.

441. The employment agreement provided that each Plaintiff who was granted a religious exemption was deemed to have applied for a religious accommodation.

442. KC was each Plaintiff's employer.

443. KC automatically proceeded to consider the religiously exempt Plaintiffs for religious accommodations.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

444. The employment agreement requires KC to first try to accommodate each Plaintiff in their current position.

445. Defendant KC breached this provision because it did not comply with it.

446. The employment agreement required KC to diligently search for available positions and accommodation for each Plaintiff to accommodate their religious exemption.

447. Defendant breached this provision because it did not comply with it.

448. OFM issued guidance to KC that stated KC's accommodation decision should be based on current medical information.

449. OFM issued guidance that it was KC's responsibility to document an employee's claim they sincerely held a religious belief that conflicted with their ability to get a Vaccine.

450. Defendant KC did not comply with OFM's guidelines and, therefore, the employment agreement because it did not make its accommodation decisions based on current medical information and did not document the two Plaintiffs claim they sincerely held a religious belief that conflicted with their ability to get the Vaccine.

451. The U.S. Constitution prohibits a state from interfering with its citizen's contract rights.

452. Due to Defendant KC's breach of or unconstitutional impairment to Plaintiffs' employment contract, each Plaintiff has been directly, and proximately damaged and defendant KC is liable for those damages.



ARNOLD JACOBOWITZ & ALVARADO PLLC
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221

## XIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each of them, pray for the following relief against the Defendants:

1. Prospective Injunctive Relief of reinstatement to each Plaintiff's prior public employment

2. Monetary judgment for all compensatory damages against those alleged to have caused the damages in this Complaint.

3. Punitive Damages pursuant to 1 U.S.C. §1983.

4. Attorney fees and costs pursuant to 42 U.S.C. § 1988, WLAD, Washington Equal Access to Justice Act, and any other federal or state law or recognized ground in equity.

5. Such other and further relief that is just and equitable.

DATED this 13th day of December 2024.

**ARNOLD JACOBOWITZ & ALVARADO PLLC**

*s/ Nathan J. Arnold*
Nathan J. Arnold, WSBA No. 45356
720 Seneca Street Ste. 107, No. 393
Seattle, WA 98101
(206) 799-4221
Nathan@AJAlawyers.com
*Counsel for Plaintiffs*